**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| BADER FAMILY FOUNDATION,<br>1236 N. Stafford St., Arlington, VA 22201 | ) ) ) | |
| Plaintiff, | ) ) ) | Civil Action No. 21-1741 |
| v. | ) ) | |
| UNITED STATES DEPARTMENT OF<br>EDUCATION,<br>400 Maryland Avenue, SW Washington, DC 20202 | ) ) ) | |
| Defendant | ) ) | |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff alleges as follows, against Defendant U.S. Department of Education:

1)  This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for improper withholding of agency records.

2)  Plaintiff seeks to compel production under two FOIA requests.

3)  The first is its May 20, 2021 FOIA request seeking emails that mention the 1619 Project, certain historians or biographers who have criticized it, and certain words potentially related to a history and civics grant program.

4)  The second is its May 21, 2021 FOIA request seeking certain emails between policymaking officials in the Education Department's Office for Civil Rights and people outside the government who apparently have spoken or written to such officials about school discipline policy and its racial or civil-rights implications.

5) These records are central to matters of timely, current political and legal deliberation, of great public interest and policy and legal significance, as is shown by recent press coverage of federal policy about school discipline, [1] and history and civics instruction.[2]

6) In response to plaintiff's second FOIA request, Defendant has failed to provide plaintiff with either the records requested, or the determination mandated by 5 U.S.C. § 552(a)(6)(A)(i). FOIA requires an agency to provide a determination of the number of responsive records it intends to release or withhold within 20 working days after receiving the request. As the D.C. Circuit explained, agencies must "inform the requester of the scope of the documents that the agency will produce, as well as the scope of the documents that the agency plans to withhold under any FOIA exemptions" within the statutory deadline of 20 working days. (*CREW v. FEC*, 711 F.3d 180 (D.C. Cir. 2013)).

7) That deadline passed no later than June 22, yet defendant still has provided no determination about what records will be produced, nor has it produced any records in response to plaintiff's request. Thus, defendant has not complied with FOIA.

---

[1] *See, e.g.,* Jason Riley, *Classroom Chaos in the Name of Racial Equity is a Bad Lesson Plan,* Wall Street Journal, May 12, 2021, available at https://www.wsj.com/articles/classroom-chaos-in-the-name-of-racial-equity-is-a-bad-lesson-plan-11620771445; Ashe Schow, *Biden Administration Expected To Bring Back Obama-Era School Discipline Rules, Which Led To Racial Quotas*, Daily Wire, May 12, 2021, available at https://www.dailywire.com/news/biden-administration-expected-to-bring-back-obama-era-school-discipline-rules-which-led-to-racial-quotas; Will Flanders, *Joe Biden Plans to Revive School Rules Punishing Kids According to Skin Color*, The Federalist, May 21, 2021, available at https://thefederalist.com/2021/05/21/joe-biden-plans-to-revive-school-rules-punishing-kids-according-to-skin-color/.

[2] *See, e.g.,* Stanley Kurtz, *Biden Set to Push Critical Race Theory on U.S. Schools*, National Review, April 19, 2021 (available at www.nationalreview.com/corner/biden-set-to-push-critical-race-theory-on-u-s-schools); Thomas Barrabi, *State AGs ask Biden to withdraw education proposals supporting 1619 Project, critical race theory*, Fox News, May 19, 2021 (available at www.foxnews.com/politics/state-ags-biden-education-proposals-1619-project-critical-race-theory).

8)  In response to plaintiff's first FOIA request, defendant responded on May 28 by stating

    that no responsive records existed.

9)  Plaintiff challenged that determination on May 28, by filing an administrative appeal.

10) Defendant's response to that appeal was due within 20 working days, that is, by no later

    than June 29, 2021. *See* 5 U.S.C. § 552(a)(6)(A)(ii).

11) Yet defendant has provided no determination with respect to plaintiff's appeal. Nor has

    it provided any responsive records.

12) Due to defendant's failure to comply with FOIA's deadlines, plaintiff has filed this

    lawsuit to compel it to comply with the law.

## **PARTIES**

13) The Bader Family Foundation (BFF) is a non-profit, 501(c)(3) tax-exempt foundation

    that focuses heavily on educational issues. It supports non-profits that use freedom of

    information laws to shed light on the operations of government; supports non-profits that

    study and publish reports about government policies related to school discipline, history

    and civics instruction, and civil-rights policy; and supports non-profit media that publish

    stories about such policies. BFF also has participated as amicus curiae in litigation

    involving civil-rights and constitutional issues in the educational context. A BFF trustee,

    Hans Bader, has published about subjects related to the requested records in the media,[3]

---

[3] *See, e.g,* Hans Bader, *Education Department may investigate schools even if they have colorblind discipline rules and practices*, Liberty Unyielding, June 6, 2021, available at https://libertyunyielding.com/2021/06/06/education-department; Bader, *Dem AGs Urge Biden to Implement Race and Gender Quotas for School Discipline*, CNS News, June 8, 2021, https://cnsnews.com/commentary/hans-bader/dem-ags-urge-biden-implement-race-and-gender-quotas-school-discipline; Bader, *History and civics grant program may subsidize discriminatory ideology*, Liberty Unyielding, Apr. 24, 2021 (https://libertyunyielding.com/2021/04/24/program).

and been quoted in the media about them,[4] or linked to by articles in the media.[5] Bader is

a former employee of the Education Department's Office for Civil Rights.[6]

14) United States Department of Education is a federal agency within the meaning of FOIA,

5 U.S.C. § 552(f)(1), and is headquartered at 400 Maryland Avenue, SW, Washington,

D.C.  20202. Defendant has possession, custody, and control of the records to which

Plaintiff seeks access.

## JURISDICTION AND VENUE

15) This Court has jurisdiction pursuant to 5 U.S.C. § 552(a)(4)(B), because this action is

brought in the District of Columbia, and 28 U.S.C. § 1331, because the resolution of

disputes under FOIA presents a federal question.

16) Venue is proper under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e) because the

records are located in Washington, D.C., and because defendant is a federal agency.

## FACTUAL AND STATUTORY BACKGROUND

17) Plaintiff submitted two FOIA requests, and defendant complied with neither of them.

### FOIA Request #21-01704-F

18)  On May 21, 2021, Plaintiff submitted a FOIA request for the following records:

---

[4] *See, e.g.,* Mark Keierleber, *Biden Administration to Renew Focus on Racial Disparities in School Discipline*, Yahoo News, June 15, 2021, www.yahoo.com/now/biden-administration-renew-focus-racial-111500565.html; Jackson Walker, *Education Department eyes racial quotas in school discipline, expert warns*, College Fix, June 2, 2021 (www.thecollegefix.com/education-department-eyes-racial-quotas-in-school-discipline-expert-warns).

[5] *See, e.g.,* Stanley Kurtz, *Biden Set to Push Critical Race Theory on U.S. Schools*, National Review, April 19, 2021 (discussing the federal history and civics grant program, and linking to Hans Bader article in hyperlink on the words "hostile educational environment") (available at www.nationalreview.com/corner/biden-set-to-push-critical-race-theory-on-u-s-schools).

[6] *See* George Will, *'Alice in Wonderland' coercion*, Oklahoman, May 26, 2013, available at https://www.oklahoman.com/article/3833883/george-f-will-alice-in-wonderland-coercion ("Hans Bader" is a "former OCR lawyer").

Emails about school discipline or school disciplinary policies sent or received by Carolyn Seugling or any presidential appointee or political appointee or Schedule C employee in the Office for Civil Rights during the covered date range, that were also sent or received by any of the following people or email accounts: Michaele Turnage Young,  Diane Smith Howard, Ames Simmons, Katherine Dunn, Russell Skiba, Olatunde Johnson, Cierra Kaler-Jones, James Scanlan, Fred Woehrle, jps@jpscanlan.com, fredwoerhle@gmail.com or skiba@indiana.edu. The covered date range is from January 20, 2021 to the earlier of the following dates: the date you process this request, or June 18, 2021. Emails are covered regardless of whether they are in an official Education Department email account, or an Education Department employee's non-official or private email account.

19) In response, defendant sent plaintiff an email on May 21 acknowledging receipt of plaintiff's FOIA request, and stating that it would be treated as Request #21-01704-F. The email from the Department of Education's Office of the Executive Secretariat stated that "Request #21-01704-F has been assigned to the request you submitted. In all future correspondence regarding this request, please reference FOIA tracking number 21-01704-F. Please refer to the FOIA tracking number to check the status of your FOIA request at the link provided below: https://foiaxpress.pal.ed.gov/app/CheckStatus.aspx."

20) This email demonstrated that defendant received plaintiff's FOIA request on May 21.

21)  But defendant did not provide a determination in response to the FOIA request.

22) The deadline for defendant to issue a determination in response to plaintiff's FOIA request was 20 working days after defendant received plaintiff's request – that is, by no later than June 22, 2021.[7] (*See* 5 U.S.C. § 552(a)(6)(A)(i)).

23)  That deadline came and went without any determination by it about whether to comply with plaintiff's FOIA request.

24) Instead, on June 21, 2021, defendant sent an email attaching a "20 Day Status Notification." In that attached letter, it stated that "At this time, we are unable to provide an estimated completion date, but intend to provide records on a rolling basis as they become available."

25) Under FOIA, an agency's determination must "inform the requester of the scope of the documents that the agency will produce, as well as the scope of the documents that the agency plans to withhold under any FOIA exemptions" within the statutory deadline of 20 working days. (*CREW v. FEC*, 711 F.3d 180 (D.C. Cir. 2013)).

26) Defendant provided no such information to plaintiff in its June 21 letter, which thus did not provide the determination required by FOIA. As of today, June 30, 2021, defendant still has not provided this information, nor has it provided any responsive records.

27) Accordingly, defendant has improperly withheld agency records.

28) Due to defendant's failure to comply with the statutory deadline, plaintiff has exhausted administrative remedies, and can now sue.[8]

---

[7] As reflected in the "20 Day Status Notification" plaintiff received, 20 working days had apparently passed by June 21, notwithstanding the Juneteenth holiday, which was observed by some, but not all, federal employees. If Juneteenth is treated as a non-working day, then the deadline was June 22.

[8] *See CREW v. FEC*, 711 F.3d 180, 189 (D.C. Cir. 2016) (holding that "if an agency does not adhere to certain statutory timelines in responding to a FOIA request, the requester is deemed by statute to have fulfilled the exhaustion requirement").

29) FOIA provides that a requester is "deemed to have exhausted his administrative remedies with respect to such request if the agency fails to comply with the applicable time limit provisions." 5 U.S.C. § 552(a)(6)(C)(i).

**FOIA Request No. 21-01695-F**

30) On May 20, 2021, plaintiff submitted a FOIA request to defendant that requested the following records:

> Any email sent or received between February 1, 2021 and the date you process this request, by any covered Education Department employee that contains the following words: (1) "1619 Project," and (2) "history and civics"; and (3) "grant" and (4) "program" or "programs" and (4) "Gordon Wood" or "James McPherson" or "Sean Wilentz" or "Timothy Sandefur" or "Victoria Bynum."
>
> The term "covered Education Department employee" means any employee of the U.S. Department of Education who oversees, manages, administers, or designs federal grant programs, or helps shape criteria for federal grants; and who works for, or with, the Office of Elementary and Secondary Education in Washington, DC. It includes the Deputy Assistant Secretary for Policy and Programs in the OESE. It does not include any employee below the GS-12 pay level.

31) On May 21, 2021, plaintiff submitted a request for the exact same records electronically by uploading it online using defendant's FOIA portal, at https://foiaxpress.pal.ed.gov.

32) In response, defendant acknowledged receipt of plaintiff's FOIA request, and assigned it tracking numbers 21-01695-F and 21-01698-F.[9]

---

[9] Tracking number 21-01695-F was assigned to the FOIA request that plaintiff uploaded. Mary Macrae, defendant's "FOIA Manager," acknowledged the receipt of the emailed FOIA request as

33) On May 28, 2021, defendant issued a determination that no responsive records existed. In a letter, it stated that "Staff from OESE informed this office (FSC) that after a search of their files, they were unable to locate any documents that were responsive to your request."

34) On May 28, 2021, plaintiff emailed an administrative appeal of this determination to defendant, which defendant received on May 28, 2021.

35) Defendant assigned the appeal tracking number 21-00034-A.

36) In its administrative appeal, plaintiff explained that it was implausible to assert that there were no responsive records, and it questioned the adequacy of defendant's search for responsive records.

37) For example, plaintiff stated that "it is wholly implausible that such a widely-discussed subject would not be discussed in a single email, given how often people have discussed it with the Department of Education," given that the "FOIA request, which relates to historical criticism of the 1619 Project by leading academics and authors, has been discussed by many people in communications with the Department of Education. For example, look at some of the more than 30,000 comments submitted in April and May in response to" the Education Department's "Proposed Priorities: American History and Civics Education (proposed rule, April 19, 2021)."

38) As plaintiff noted, "Many of the comments in that rulemaking record contain the words in quotes in my FOIA request, including '1619 Project,' 'history and civics,' 'program,'

---

FOIA Request No. 21-01698-F in emails sent on the morning of May 21, 2021, and characterized it as a "duplicate request to your previous request you provided."

and the name of one or more of the five historians and authors I listed, 'Gordon Wood' or 'James McPherson' or 'Sean Wilentz' or 'Timothy Sandefur' or 'Victoria Bynum.'"

39) As plaintiff further observed, "To address these comments in their final rule, Education Department officials necessarily have had to review and begin discussing them, which necessarily results in emails between Education Department employees containing these search terms…. So emails among DOE employees responsive to our request necessarily have come into being as a result."

40) Moreover, plaintiff noted, commenters also "sent courtesy copies of their comments, or communications similar to their comments, by email to Department employees," such as "Mia Howerton."

41) For example, plaintiff cited a "mass email announcing [a] group's comments addressed to [a specific] Education Department official, and filed at Regulations.Gov as Comment ID ED-2021-OESE-0033-29868)."

42) Plaintiff noted that "It is wholly implausible that such commenters, who sought a maximum audience for their concerns, did not also share their comments by email with policymaking officials in the Department of Education and the Office of Elementary and Secondary Education. And that is putting aside the likelihood that other members of the public likely emailed Department employees about this subject (even without submitting any comments at Regulations.Gov), given that the Education Department's rulemaking became the subject of great public controversy and news coverage. *See, e.g.,* Thomas Barrabi, *State AGs ask Biden to withdraw education proposals supporting 1619 Project, critical race theory*, Fox News, May 19, 2021, available at www.foxnews.com/politics/state-ags-biden-education-proposals-1619-project-critical-race-theory."

43) Plaintiff stated that "It is utterly implausible that such a widely-discussed subject would not be discussed in a single email.  *Cf. ACLU v. CIA*, 710 F.3d 422, 430 (D.C. Cir. 2013) (it is simply "implausible" for an agency to claim it "does not possess a single document" in response to a FOIA request about a subject it publicly discussed)."

44) Plaintiff further noted that "people send emails to Education Department employees all the time about controversial subjects." Plaintiff cited the experience of undersigned counsel, who, when  he "worked in the Education Department," "received emails from academics, lawyers, journalists, and members of the general public about controversies related to Education Department policy, even though [he] was just a lowly attorney-advisor, not a high-ranking policymaker."

45) Plaintiff questioned whether defendant had failed to search for emails exchanged with employees who worked "with" but not "for" the Office of Elementary and Secondary Education.

46) Defendant's response to that appeal was due within 20 working days, that is, by no later than June 29, 2021. *See* 5 U.S.C. § 552(a)(6)(A)(ii).

47) But defendant did not comply with that deadline. Nor did it provide any responsive records. As of today, June 30, 2021, defendant has neither sent plaintiff a determination in response to plaintiff's appeal, nor produced any responsive records.

48) Moreover, responsive records in fact existed.

49) A responsive record is shown in Exhibit 1.

50) It contains a May 20, 2021 email to Deputy Assistant Secretary Ian Rosenblum.

51) That May 20, 2021 email in Rosenblum's email account was a record requested by plaintiff's FOIA request.

52) That May 20, 2021 email was a responsive record.

53) Defendant did not produce this record or even disclose its existence.

54) Accordingly, defendant improperly withheld agency records.

55) Defendant never sent plaintiff a ruling on plaintiff's administrative appeal.

56) Due to defendant's failure to comply with the statutory deadline for ruling on plaintiff's administrative appeal, plaintiff has exhausted administrative remedies, and can now sue.[10]

57) FOIA provides that a requester is "deemed to have exhausted his administrative remedies with respect to such request if the agency fails to comply with the applicable time limit provisions." 5 U.S.C. § 552(a)(6)(C)(i).

58) Defendant's web site now lists plaintiff's appeal as "closed." In a June 4, 2021 email, defendant stated, "the status of your Appeal request #'21-00034-A' has been updated to the following status 'In Process'." But when plaintiff visited defendant's FOIA portal on June 29, 2021,[11] defendant's web site said that plaintiff's appeal's "Status" was "closed."

59) Closure of the administrative appeal brings the administrative process to an end, meaning that plaintiff has exhausted all administrative remedies, for that additional reason.[12]

---

[10] *See CREW v. FEC*, 711 F.3d 180, 189 (D.C. Cir. 2016) (holding that "if an agency does not adhere to certain statutory timelines in responding to a FOIA request, the requester is deemed by statute to have fulfilled the exhaustion requirement")

[11] Plaintiff visited https://foiaxpress.pal.ed.gov/app/CreateAppeal.aspx?edit=11134 and https://foiaxpress.pal.ed.gov/app/RequestStatus.aspx

[12] If an agency closes an appeal without ruling on it, or without notifying the FOIA requester, that does not trigger any duty by plaintiff to administratively appeal that action to try to reinstate its appeal. To "trigger the administrative exhaustion requirement, the agency must at

60) Thus, plaintiff can now sue over this FOIA request as well.

## Defendant Has Waived the Right to Charge Fees

61) Since defendant did not comply with FOIA's deadlines, it has waived the right to collect any fees for processing plaintiff's FOIA requests.

62) In *Bensman v. National Park Service*, 806 F. Supp. 2d 31 (D.D.C. 2011) this Court noted: "[The effect of] the 2007 Amendments was to impose consequences on agencies that do not act in good faith or otherwise fail to comport with FOIA's requirements. See S. Rep. No. 110-59. To underscore Congress's belief in the importance of the statutory time limit, the 2007 Amendments declare that '[a]n agency shall not assess search fees… if the agency fails to comply with *any time limit*' of FOIA" (emphasis added).

63) Moreover, it would be inappropriate to charge any fees for an additional reason: the records sought in plaintiff's FOIA requests are of great public interest, and producing them would be of public benefit. Plaintiff thus requested fee waivers in its FOIA requests.

64) Production of the requested records will make them available to the public, providing a public benefit. When agencies produce records to undersigned counsel, he posts them on the internet, and includes a hyperlink to them in his blog posts at the Liberty Unyielding

---

least…inform the requester that it can appeal whatever portion of the 'determination' is adverse." *CREW v. FEC*, 711 F.3d 180, 188 (D.C. Cir. 2016); *see Ruotolo v. DOJ*, 53 F.3d 4, 9 (2d Cir. 1995) (exhaustion requirement not triggered when agency response contained no notification of right to administratively appeal).

Defendant did not inform plaintiff of the right to make any such appeal. It has not sent any email or letter informing plaintiff that it closed plaintiff's appeal, much less included any right-to-appeal language in it, so any "closure" cannot trigger the administrative exhaustion requirement, even putting aside the fact that plaintiff has also exhausted administrative remedies due to defendant's failure to rule on plaintiff's appeal within the 20-day deadline mandated by FOIA. Thus, there is no bar to plaintiff suing now.

blog and other blogs that reproduce his blog posts.[13] Thousands of people read such blog posts, making the records widely available.[14]

## FIRST CLAIM FOR RELIEF
### Duty to Produce Records – Declaratory Judgment

65) Plaintiff re-alleges paragraphs 1-64 as if fully set out herein.

66) Defendant is improperly withholding agency records.

67) The records are urgently needed by an individual engaged in disseminating information in order to inform the public concerning actual or alleged Federal Government activity.

68) Plaintiff asks this Court to enter a judgment declaring that:

    a.    Plaintiff is entitled to the records described in its FOIA requests, and any attachments thereto;

    b.    Defendant's processing of plaintiff's FOIA requests is not in accordance with the law, and does not satisfy Defendant's obligations under FOIA;

    c.    Defendant has a duty to produce the records responsive to plaintiff's FOIA requests;

    d.    Defendant has a duty to produce them without charging any fees.

## SECOND CLAIM FOR RELIEF
### Duty to Produce Records – Injunctive Relief

69) Plaintiff re-alleges paragraphs 1-68 as if fully set out herein.

---

[13] *See, e.g.*, Hans Bader, *Court orders release of records related to claim global warming causes severe winter cold*, Liberty Unyielding, March 18, 2016 (https://libertyunyielding.com/2016/03/18/court-orders-release-of-records-related-to-claim-global-warming-causes-severe-winter-cold).

[14] For example, Liberty Unyielding has thousands of readers. Between December 2020 and May 2021, it had between 90,000 and 290,000 readers, according to Similarweb. See https://www.similarweb.com/website/libertyunyielding.com.

70) Plaintiff is entitled to injunctive relief compelling defendant to produce the records described in plaintiff's FOIA requests, without charging any fees.

71) Plaintiff asks the Court to issue an injunction ordering defendant to produce to plaintiff, within 10 business days of the date of the order, the records sought in plaintiff's FOIA requests, and any attachments thereto.

### THIRD CLAIM FOR RELIEF
### Costs And Fees – Injunctive Relief

72) Plaintiff re-alleges paragraphs 1-71 as if fully set out herein.

73) Pursuant to 5 U.S.C. § 552(a)(4)(E), the Court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed.

74) This Court should enter an injunction ordering the defendant to pay reasonable attorney fees and other litigation costs reasonably incurred in this case.

WHEREFORE, Plaintiff requests the declaratory and injunctive relief herein sought, and an award for its attorney fees and costs and such other and further relief as the Court shall deem proper.

Respectfully submitted this 30th day of June, 2021,

_____/s/ Hans F. Bader_____
Hans F. Bader
D.C. Bar No. 466545
hfb138@yahoo.com
1100 Conn. Ave., NW, #625
Washington, DC 20036
(703) 399-6738

*Attorney for Plaintiff*

EXHIBIT 1
is beneath this page

Here's an email I received from Fred Woehrle

---

From:  George Leef (georgeleef@jamesgmartin.center)

To:       hfb138@yahoo.com

Date:  Tuesday, June 29, 2021, 9:24 AM EDT

---

---------- Forwarded message ---------
From: **Fred Woehrle** <fredwoehrle@gmail.com>
Date: Thu, May 20, 2021 at 10:04 PM
Subject: Re: "Proposed Priorities: American History and Civics Education" (proposed rule, April 19, 2021)
To: <Ian.Rosenblum@ed.gov>

Dear Deputy Assistant Secretary Rosenblum:

The New York Times' 1619 Project is so badly flawed, and makes so many false claims, that the Education Department should not have cited it, and it should not be touted in the Education Department's priorities for the American History and Civics Education programs.

As Education Week points out, "historians have criticized important elements of the 1619 Project." See Andrew Ujifusa, "Biden Administration Cites 1619 Project as Inspiration in History Grant Proposal," Education Week, April 19, 2021.

As CNS News points out, the 1619 Project makes false claims about America's history. It made debunked claims such as saying that "'the moment [America] began" was in 1619, and that an incident in that year "is the country's very origin." See "Biden Incentivizes Schools to Teach Anti-White Racism to 'Remedy' Anti-Black Racism," CNS News, April 22, 2021.

That assertion is wrong, as is explained by Timothy Sandefur, author of a well-known biography of Frederick Douglass, "Frederick Douglass: Self-Made Man." See Sandefur, "The 1619 Project: An Autopsy," The Dispatch, October 27, 2020, available at https://thedispatch.com/p/the-1619-project-an-autopsy

The 1619 Project claimed that "the moment [America] began" was in 1619, when 20 enslaved people were brought ashore in Virginia and sold. This incident, the 1619 Project said, "is the country's very origin." Although the nation's "official birthdate" came in 1776, the 1619 Project claims that it was really "out of slavery—and the anti-black racism it required" that "nearly everything that has truly made America exceptional" grew.

This claim about America's origins is so bizarre that it has been rejected as false by historians of every ideological stripe -- from liberals, moderates, and conservatives to socialists. "Despite the pretense of establishing the United States' 'true' foundation, the 1619 Project is a politically motivated falsification of history. It presents and interprets American history entirely through the prism of race and racial conflict," notes the World Socialist web site, citing historians of all ideological persuasions. In reality, the American colonies were first settled in 1607, before any enslaved people arrived on America's shores. Most of the most populous colonies, such as Massachusetts (the birthplace of the American Revolution), did not depend upon slave labor, and abolished slavery soon after America became an independent nation. The northern free states were much more populous and economically advanced than the southern slave states, which helps explain why the South lost the Civil War. So slavery did not cause America's economic development and growth.

In addition to containing false claims about America's origins and founding, the 1619 Project creates a false black-white dichotomy and neglects Asian-American history. Timothy Sandefur describes some of the vitally-important Chinese-American and Japanese-American history it omits, in "The 1619 Project: An Autopsy," The Dispatch, October 27, 2020.

Since it neglects Asian-American history, it is not a good example for "Proposed Priority 1—Projects That Incorporate Racially, Ethnically, Culturally, and Linguistically Diverse Perspectives into Teaching and Learning."

As former Education Department employee Adam Kissel points out, the proposed priority itself is deficient in another respect. President Biden's Executive Order on supporting underserved communities (Jan. 20, 2021) requires that "the Director of OMB shall, in coordination with the heads of agencies, study strategies, consistent with applicable law, for allocating Federal resources in a manner that increases investment in underserved communities, as well as individuals from those communities."

But Proposed Priority 1, part (b), fails to include "rural areas" or "geographic communities," as mentioned in the Executive Order. Part (b) does not provide equity as defined by President Biden.

The Education Department should not have cited Ibram Kendi, because his views contradict reality, and contradict federal court rulings that are binding on the Education Department. Kendi's bad judgment is reflected in his idolizing a notorious anti-semite.

In Proposed Priority 1, the Education Department says that "As the scholar Ibram X. Kendi has expressed,...'Antiracist ideas argue that racist policies are the cause of racial inequities.'"

But Ibram Kendi advocates widescale discrimination against whites and Asians to 'remedy' blacks' underrepresentation. The 'key concept' in Kendi's book How to Be an Antiracist is that to remedy the underrepresentation of certain minority groups, society needs to engage in discrimination against other groups, such as whites. As Kendi puts it, "the only remedy to racist discrimination is antiracist discrimination. The only remedy to past discrimination is present discrimination. The only remedy to present discrimination is future discrimination." But the sweeping racial discrimination Kendi advocates violates Supreme Court decisions such as Richmond v. J.A. Croson Co., 488 U.S. 469 (1989).

In the eyes of the courts, the remedy to past discrimination is often not present discrimination. Discrimination is supposed to be a "last resort." (Bartlett v. Strickland, 556 U.S. 1, 21 (2009)). Past discrimination against minorities has to involve evidence of discrimination that is both recent and widespread, and by the government itself, to justify present discrimination against whites. (See Richmond v. J.A. Croson Co., 488 U.S. 469 (1989) (Supreme Court rules that "societal discrimination" is not a reason for discrimination against whites); Middleton v. City of Flint, 92 F.3d 396 (6th Cir. 1996) (court rules that only evidence of widespread discrimination suffices, not anecdotes of discrimination); Brunet v. City of Columbus, 1 F.3d 390, 409 (1993) (court rules that discrimination that happened many years earlier did not provide a basis for affirmative action program), citing Hammon v. Barry, 826 F.2d 73, 76-77 (D.C. Cir. 1987)).

Kendi is also inappropriate authority to cite because of his indifference toward anti-semitism. The "heroine" in one of Kendi's books "is a notorious antisemite, Angela Davis," notes law professor David Bernstein. "While Kendi disparages a host of American civil rights heroes, from Frederick Douglass to MLK as being too moderate, Davis is his odd choice as an antiracist exemplar," Professor Bernstein says. "After a dubious acquittal from a charge of conspiracy to murder as part of a Black Panthers jailbreak, she spent the most productive years of her career as an activist for the American Communist Party." She disparaged jailed Jewish dissidents in the Soviet Union as "Zionist fascists and opponents of socialism'" who should "be kept in prison.'" See David Bernstein, "Jewish (and Other) Schools Shouldn't Assign Ibram Kendi's Stamped: a Remix," Times of Israel, October 15, 2020 available at https://blogs.timesofisrael.com/jewish-and-other-schools-shouldnt-assign-ibram-kendis-stamped-a-remix/

Kendi claims that "When I see racial disparities, I see racism." But not all disparities are discriminatory in nature or in their origins. As the Fourth Circuit Court of Appeals ruled, "disparity does not, by itself, constitute discrimination." (See Belk v. Charlotte-Mecklenburg Board of Education, 269 F.3d 305, 332 (4th Cir. 2001) (en banc)).

And as CNS News points out, "Kendi's claim ignores the fact that many racial disparities are not caused by racism. For example, Latinos live three years longer than whites, on average, even though doctors don't discriminate in their favor. Asians make more money than whites, on average, even though Japanese and Chinese Americans suffered massive discrimination in America a century ago. And while blacks make less money than whites, on average, immigrants from some African countries like Ghana and Nigeria typically make more money than whites do. Racial disparities exist everywhere in society and the world, often for reasons unrelated to racism, as the black economist Thomas Sowell chronicles in his book "Discrimination and Disparities." To abolish racial disparities as Kendi seeks to do would require a totalitarian government, says black economist Glenn Loury." See "Biden Incentivizes Schools to Teach Anti-White Racism to 'Remedy' Anti-Black Racism," CNS News, April 22, 2021.

The Education Department quotes Kendi's statement that "racist policies are the cause of racial inequities." The meaning of the word "inequities" in this statement is ambiguous. If "inequities" simply means racial "disparities," then this claim is wrong, because racist policies are not why Hispanics live longer than whites, or why Asians out-earn whites -- or why most other racial disparities exist.

Thank you for taking the time to read my email.