## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BADER FAMILY FOUNDATION,<br><br>       *Plaintiff*,<br><br>  v.<br><br>UNITED STATES DEPARTMENT OF EDUCATION,<br><br>       *Defendant.* | No. 21-cv-1741 (DLF) |

## <u>MEMORANDUM OPINION</u>

The Bader Family Foundation (the Foundation) alleges that the Department of Education (the Department) violated the Freedom of Information Act (FOIA), 5 U.S.C. § 552, by performing an inadequate search and improper redactions in response to its FOIA request. Compl., Dkt. 1. Before the Court are the Department's Motion for Summary Judgment, Dkt. 12, and the Foundation's Cross-Motion for Summary Judgment, Dkt. 15. For the reasons that follow, the Court will grant in part and deny in part both motions.

## I.      BACKGROUND

On May 21, 2021, the Foundation submitted a FOIA request to the Department for certain records related to school disciplinary policies. Compl. ¶ 2. Specifically, the Foundation requested "[e]mails about school discipline or school disciplinary policies sent or received by Carolyn Seugling or any presidential appointee or political appointee or Schedule C employee in the Office for Civil Rights . . . that were also sent or received by any of" a list of twelve people or email accounts. Minami Decl. Ex. A at 1, Dkt. 12-4. The request sought emails from January 20, 2021 to June 18, 2021 or the date of the search, whichever was earlier. *Id.* Finally, it specified that

"[e]mails are covered regardless of whether they are in an official Education Department email account, or an Education Department employee's non-official or private email account."  *Id.*

According to its affidavit, the Department conducted an administrative search on the email accounts of Carolyn Seugling, Suzanne Goldberg, Monique Dixon, and three others, the political appointees in the Office for Civil Rights at that time.  Minami Decl. ¶¶ 6–7, Dkt. 12-3.  It searched only their government email accounts.  Def.'s Resp. to Pl.'s Stmt. of Material Facts ¶ 28, Dkt. 16-1.  The search terms it used were "school discipline" and "school disciplinary policies."  Minami Decl. ¶ 6.  Finally, the search parameters specified that the emails must be sent to or from any of the people or email addresses listed in the Foundation's request.  *Id.*  The search yielded 357 pages of responsive records.  *Id.* ¶ 16.  Upon review, a Department employee redacted personal information on 18 pages under FOIA Exemption 6.  *Id.* ¶ 19.

The Foundation first brought this suit on June 30, 2021, because it had not yet received any records.  Compl. ¶¶ 4–6.  The Department subsequently produced the 357 pages on August 30, 2021.  Minami Decl. ¶ 19.  After receiving the documents, the Foundation requested that the Department also search Goldberg's non-government, Columbia Law School email account.  Bader Decl. ¶ 1, Dkt. 14-2.  The Department did not do so.  *Id.*; Def.'s Resp. to Pl.'s Stmt. of Material Facts ¶ 25.  The Foundation challenges the adequacy of the search for that reason and because the Department failed to produce certain known responsive emails.  In addition, the Foundation challenges many of the Department's Exemption 6 redactions.

## II.   LEGAL STANDARDS

Rule 56 of the Federal Rules of Civil Procedure states that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "Materiality is, of course,

a function of the applicable legal standard, which in this case is that an agency responding to a FOIA request must conduct a search reasonably calculated to uncover all relevant documents, and, if challenged, must demonstrate beyond material doubt that the search was reasonable." *Kowalczyk v. DOJ*, 73 F.3d 386, 388 (D.C. Cir. 1996) (internal quotation marks omitted).  All facts and inferences must be viewed in the light most favorable to the requester and the agency bears the burden of showing that it complied with FOIA.  *Chambers v. U.S. Dep't of Interior*, 568 F.3d 998, 1003 (D.C. Cir. 2009).

To prevail under Rule 56, a federal agency "must prove that each document that falls within the class requested either has been produced, is unidentifiable, or is wholly exempt from the [FOIA's] inspection requirements."  *Perry v. Block*, 684 F.2d 121, 126 (D.C. Cir. 1982) (per curiam) (internal quotation marks omitted).  "The system of disclosure established by the FOIA is simple in theory.  A federal agency must disclose agency records unless they may be withheld pursuant to one of the nine enumerated exemptions listed in [5 U.S.C.] § 552(b)." *DOJ v. Julian*, 486 U.S. 1, 8 (1988).  "The peculiarities inherent in FOIA litigation, with the responding agencies often in sole possession of requested records and with information searches conducted only by agency personnel, have led federal courts to rely on government affidavits to determine whether the statutory obligations of the FOIA have been met."  *Perry*, 684 F.2d at 126.  Agency affidavits are entitled to a presumption of good faith, *SafeCard Services, Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991), and "[s]ummary judgment may be granted on the basis of agency affidavits if they contain reasonable specificity of detail rather than merely conclusory statements, and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith," *Judicial Watch, Inc. v. U.S. Secret Service*, 726 F.3d 208, 215 (D.C. Cir. 2013) (internal quotation marks omitted).

Courts in this jurisdiction recognize that "the vast majority of FOIA cases can be resolved on summary judgment." *Brayton v. Off. of the U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011).  If, however, "material facts are genuinely in issue or, though undisputed, are susceptible to divergent inferences bearing upon an issue critical to disposition of the case, summary judgment is not available" to the agency.  *Alyeska Pipeline Serv. Co. v. EPA*, 856 F.2d 309, 314 (D.C. Cir. 1988).

## III.   ANALYSIS

### A.   The Adequacy of the Search

In general, the adequacy of a search "is judged by a standard of reasonableness and depends, not surprisingly, upon the facts of each case." *Weisberg v. DOJ*, 745 F.2d 1476, 1485 (D.C. Cir. 1984).  "The agency has the initial burden to demonstrate the adequacy of its search, which it may meet by providing declarations or affidavits that are 'relatively detailed[,] . . . nonconclusory and submitted in good faith.'" *Landmark Legal Found. v. EPA*, 959 F. Supp. 2d 175, 181 (D.D.C. 2013) (internal quotation marks omitted).  "Once the agency has provided a reasonably detailed affidavit describing its search, the burden shifts to the FOIA requester to produce 'countervailing evidence' suggesting that a genuine dispute of material fact exists as to the adequacy of the search." *Hunton & Williams LLP v. EPA*, 248 F. Supp. 3d 220, 236 (D.D.C. 2017) (citing *Morley v. CIA*, 508 F.3d 1108, 1116 (D.C. Cir. 2007)).

The Department submitted a declaration from Kristine Minami, the employee responsible for administering this FOIA request, which describes the search process and parameters in reasonable detail.  *See* Minami Decl. ¶¶ 1–2, 6–19; *see also SafeCard*, 926 F.2d at 1201 (approving of affidavit submitted by the employee who coordinated and supervised the search).  The Foundation contends that the search was inadequate because it failed to (1) use broader search

4

terms and (2) include Suzanne Goldberg's non-government email account.  *See* Pl.'s Cross-Mot. for Summary Judgment at 2–6, Dkt. 15.  The Court agrees.  It will accordingly deny the Department's motion for summary judgment as to the adequacy of the search, and grant in part and deny in part the Foundation's motion.

### 1.    *Failure to use broader search terms*

"In general, a FOIA petitioner cannot dictate the search terms for his or her FOIA request." *Bigwood v. DOD*, 132 F. Supp. 3d 124, 140 (D.D.C. 2015).  The agency retains "discretion in crafting a list of search terms that they believe[] to be reasonably tailored to uncover documents responsive to the FOIA request."  *Agility Pub. Warehousing Co. K.S.C. v. NSA*, 113 F. Supp. 3d 313, 339 (D.D.C. 2015) (internal quotation marks omitted).  "Where the agency's search terms are reasonable, the Court will not second guess the agency regarding whether other search terms might have been superior."  *Liberation Newspaper v. Dep't of State*, 80 F. Supp. 3d 137, 146–47 (D.D.C. 2015).  But ultimately, "it is the agency's burden to show 'beyond material doubt that its search was reasonably calculated to uncover all relevant documents.'"  *Gov't Accountability Project v. DHS*, 335 F. Supp. 3d 7, 11 (D.D.C. 2018) (quoting *Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 514 (D.C. Cir. 2011)).

In this case, the Department used exactly two search terms—"school discipline" and "school disciplinary policies"—to search for records satisfying the Foundation's request for "[e]mails about school discipline or school disciplinary policies."  Minami Decl. ¶¶ 4, 6.  That decision was unreasonable because searching "for [a] phrase verbatim [is] always doomed to return limited results."  *Gov't Accountability Project*, 335 F. Supp. 3d at 11.  Most notably, the search excluded any emails that contained even the slightest modifications of those terms.  For instance, the Department's search could not have uncovered emails discussing "policies for disciplining

students in school," or even "school disciplinary policy."  At the very least, the Department should have included "logical variations" of the phrases and decoupled search terms, rather than "group[ing] the words together."  *Id.* at 11–12.

For the same reason, the Department should have included "obvious substitutes" for the words used in the Foundation's FOIA request—"school," "discipline," and "policy."  *See id.* at 11 (search should have included synonyms for requested terms "test" and "ideological"); *see also Summers v. DOJ*, 934 F. Supp. 458, 461 (D.D.C. 1996) (search should have included obvious alternate terms for FOIA request seeking "any and all commitment calendars"); *Brennan Ctr. for Just. at N.Y.U. Sch. of L. v. DOJ*, 377 F. Supp. 3d 428, 434–35 (S.D.N.Y. 2019) (search should have included obvious alternate terms for "election integrity commission").  The agency "has a duty to construe a FOIA request liberally."  *Nation Mag., Wash. Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995).  And the request sought all emails "about" school discipline or disciplinary policy, not just ones using those exact phrases.  *See id.* (noting that the appellants sought records "pertaining to" Ross Perot's offers to assist the government in drug interdiction efforts, not just those indexed under his name).  By not including obvious synonyms, the Department did not "us[e] methods which [could] be reasonably expected to produce the information requested."  *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).

Construing the Foundation's request liberally, rather than literally, would not render the request too vague, as the Department argues, *see* Def.'s Reply at 16–17, Dkt. 16.  The cases the Department cites on this point are not analogous to this case, as each dealt with requests so "overbroad" that they "did not describe the records sought sufficiently to allow a professional employee familiar with the area in question to locate the responsive records."  *Freedom Watch, Inc. v. U.S. Dep't of State*, 925 F. Supp. 2d 55, 61–62 (D.D.C. 2013); *see* Def.'s Reply at 15–16.

Each of the cited cases considered FOIA requests for all documents "pertaining in whole or in part," *Sack v. CIA*, 53 F. Supp. 3d 154, 163 (D.D.C. 2014), or "relat[ing] in any way," *Cable News Network, Inc. v. FBI*, 271 F. Supp. 3d 108, 112 (D.D.C. 2017), to a certain topic.  These requests were "too vague" because "all documents 'relate' to all others in some remote fashion.'" *Id.* (quoting *Freedom Watch*, 925 F. Supp. 2d at 61); *see also Fonda v. CIA*, 434 F. Supp. 498, 501 (D.D.C. 1977); *Hunt v. CFTC* 484 F. Supp. 47, 51 (D.D.C. 1979).

Not so here.  A request for documents "about" school discipline is hardly so shapeless and unwieldy that a professional employee familiar with the concept would be unable to locate responsive records.  Rather, that task can be easily accomplished by searching for logical variations, obvious alternatives, and groups of words appearing near each other. The Department failed to do so here.

Indeed, there are "positive indications of overlooked materials" that cast further doubt on the adequacy of the Department's search.  *Reps. Comm. for Freedom of Press v. FBI*, 877 F.3d 399, 402 (D.C. Cir. 2017) (quotation marks omitted).  The Department stated that it searched for and provided all emails between Goldberg's government email address and an individual named Fred Woehrle, using the terms "school discipline" or "school disciplinary policies," from January 21 to June 18, 2021.  Minami Decl. ¶ 6.  But the Foundation has identified at least two emails that meet these exact parameters—yet were not produced.  *See* Bader Decl. Ex. 3, Dkt. 14-2 (May 11 email from Woehrle to Goldberg's government address with subject "Examining Disparities in School Discipline and the Pursuit of Safe and Inclusive Schools"); Suppl. Bader Decl. Ex. 2, Dkt. 18-1 (May 12 email from Goldberg's government address to Woehrle with same subject line).  The Department concedes that its search should have captured them, but did not.  Def.'s Reply at 7; Def.'s Resp. to Pl.'s Stmt. of Material Facts ¶ 22.  Their nonproduction is thus "countervailing

evidence" putting into genuine issue "the sufficiency of the agency's identification or retrieval procedure." *Founding Church of Scientology v. NSA*, 610 F.2d 824, 836 (D.C. Cir. 1979).

It is true that this Circuit has long held "the agency's failure to turn up a particular document, or mere speculation that as yet uncovered documents might exist, does not undermine the determination that the agency conducted an adequate search for the requested records." *Wilbur v. CIA*, 355 F.3d 675, 678 (D.C. Cir. 2004); *see also Ancient Coin Collectors*, 641 F.3d at 514; *Meeropol v. Meese*, 790 F.2d 942, 951 (D.C. Cir. 1986). However, those cases largely involve "[m]ere speculation that as yet uncovered documents *may* exist." *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 316 (D.C. Cir. 2003) (emphasis added and quotation marks omitted); *see also Ancient Coin Collectors*, 641 F.3d at 514; *SafeCard*, 926 F.2d at 1201 (explaining that the unproduced documents were "presumably nonexistent"); *Carlborg v. Dep't of the Navy*, No. 18-CV-1881, 2020 WL 4583270, at *6 (D.D.C. Aug. 10, 2020) (explaining that there was "no evidence to support [plaintiff's] claims" that unproduced documents existed).[1] This case, in contrast, involves "concrete evidence from [the appellants] that such files *actually* exist." *Meeropol*, 790 F.2d at 954 (emphasis added).

Moreover, many of those cases—dating before the age of computerized searches—reason that "[i]t would be unreasonable to expect even the most exhaustive search to uncover *every* responsive file," given human error that may arise when manually searching numerous boxes. *Id.* at 953. But while human error could lead a "reasonable and thorough search" to "miss[]" particular documents, *Iturralde*, 315 F.3d at 315, the same cannot be said for a computerized email search.

---

[1] For this reason, the Foundation's general skepticism about the search's failure to return any emails to or from either Woehrle or Goldberg, *see* Pl.'s Opp'n at 15–17, is not itself persuasive. *See Meeropol*, 790 F.2d at 953–54; *Ancient Coin Collectors*, 641 F.3d at 514. The Court focuses only on the concrete evidence of missed documents.

A computer does not inadvertently overlook documents falling within particular search parameters.

It is possible that the emails were not produced because they were "destroyed," *i.e.*, deleted. *See id.*; *Wilbur*, 355 F.3d at 678.  But the Department never asserts that.  And it has offered no explanation for the missing emails, *see Morley*, 508 F.3d at 1120 (agency's failure to explain record's absence foreclosed summary judgment), much less conducted any follow-up search after missing records were brought to its attention, *see, e.g.*, *Carlborg*, 2020 WL 4583270, at *5.  The missing emails suggest that something may have gone wrong with the query or the production, and they provide additional justification for denying the Department's motion for summary judgment.  *See Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990) (denying summary judgment because missing records left "substantial doubt as to the sufficiency of the search"); *Weisberg v. DOJ*, 627 F.2d 365, 369 (D.C. Cir. 1980) (explaining summary judgment was inappropriate due to a factual question as to whether a document was destroyed).

Because the Department did not fulfill its duty to craft reasonable search terms, the Foundation's motion for summary judgment on this score is granted, and the Department's motion is denied.  The Department is ordered to conduct an additional search.  This is not to say that the Department must search its records for any particular synonym or type of school discipline, *see* Pl.'s Opp'n to Def.'s Mot. for Summary Judgment at 20, Dkt. 14, because a search "need not be perfect, only adequate," *Meeropol*, 790 F.2d at 956, it must be "reasonably calculated to uncover all relevant documents," *Weisberg v. DOJ*, 705 F.2d 1344, 1351 (D.C. Cir. 1983).  To that end, the parties shall meet and confer within fourteen days to "engage in a good faith effort to arrive at a reasonably limited set of additional search terms that rectify the under-inclusivity . . . without

9

being too over-inclusive." *Gov't Accountability Project*, 335 F. Supp. 3d at 13; *Bagwell v. DOJ*, 311 F. Supp. 3d 223, 230 (D.D.C. 2018).

        2.    *Failure to search non-government email account*

        This Circuit has made clear that "agency records"—even those stored on a personal email account—are subject to FOIA. *Competitive Enter. Inst. v. Off. of Sci. & Tech. Pol'y*, 827 F.3d 145, 149 (D.C. Cir. 2016). Nonetheless, courts presume that agency records are unlikely to be found solely on personal email accounts, since federal law and regulations prohibit officials from using them for official business without forwarding to or copying their official account. *Judicial Watch, Inc. v. DOJ*, 319 F. Supp. 3d 431, 437–38 (D.D.C. 2018) (citing cases); *see also Democracy Forward Found. v. U.S. Dep't of Com.*, 474 F. Supp. 3d 69, 74 (D.D.C. 2020); 44 U.S.C. § 2911(a). A plaintiff can overcome this presumption with evidence that "rebut[s] agency affidavits with something more than pure speculation." *Competitive Enter. Inst. v. Off. of Sci. & Tech. Pol'y*, 241 F. Supp. 3d 14, 22 (D.D.C. 2017) (internal quotation marks omitted). The Foundation has done so here.

        The Foundation has provided concrete evidence that agency records may be found on Goldberg's Columbia Law School email account. The Foundation points to at least three emails on the school account that were addressed to Goldberg using her official title, and all three discussed school discipline policy.[2] *See* Bader Decl. Exs. 1, 2; Scanlan Decl. Ex. 1, Dkt. 14-3. The *receipt* of government-related emails has been relevant evidence to rebut the presumption in

---

[2] That Goldberg might receive official emails, particularly from the public, at her school email address is unsurprising, given that the school's public website appears to welcome public emails to that address. The website, which holds Goldberg out as the current "deputy assistant secretary for Strategic Operations and Outreach in the Office for Civil Rights (serving as acting assistant secretary) at the U.S. Department of Education," lists her school email address as her "contact" information. *See* Bader Decl. Ex. 4, Dkt. 14-2.

other cases.  *See, e.g.*, *Democracy Forward*, 474 F. Supp. 3d at 75 (analyzing evidence concerning "*all* Commerce-related emails . . . sent or received through [Secretary's] personal email accounts," not just "those emails the [he] *sent*" (emphasis in original)); *Brennan Ctr.*, 377 F. Supp. 3d at 435 (noting that an official "received emails discussing election integrity[] on [her] private email account[]").

Although the record is devoid of any instance where Goldberg *sent* an official email from her school address, that absence of evidence alone does not prove that Goldberg did not use her school account for government business.  Notably, the Department's declaration does not address Goldberg's school email at all.  *See generally* Minami Decl.  It does not state, for example, that Goldberg did not use her school email account for official business, that a search of her school account "was [un]likely to produce responsive documents," *Oglesby*, 920 F.2d at 68, or even that the Department searched "all [places] likely to contain responsive materials," *id*.  The Department's "silence" on this issue "speaks volumes."  *Landmark Legal Found.*, 959 F. Supp. 2d at 182.  Given at least "one concrete example" of Department-related communication on the school email, the Department's "failure to deny the allegations that personal accounts were being used to conduct official business leaves open the possibility that they were."  *Id.*; *compare Democracy Forward*, 474 F. Supp. 3d at 76 (search of personal email account was reasonable where there was some evidence of official use and the agency "has not proven—either through a sworn declaration or other evidence—that the official" complied with forwarding procedures), *with Competitive Enter. Inst.*, 241 F. Supp. 3d at 21–22 (search of personal email account not reasonable where the agency provided sworn affidavit by the official that he complied with forwarding procedures).

In sum, on the existing record, there is simply not enough information to determine whether agency records are likely to be found in Goldberg's school email account.  Because a genuine

dispute of material fact still exists, summary judgment is not appropriate, and both motions are denied. *See Reps. Comm. for Freedom of Press*, 877 F.3d at 402. The Department shall supplement the record with a sworn declaration that provides specific information addressing whether Goldberg's school email account was used, even sporadically, for official business, and, if appropriate, the Department shall direct Goldberg to search her school account. *See Brennan Ctr.*, 377 F. Supp. 3d at 435–36 (requiring the agency to "ask [the employee] if [she] used private email accounts relating to the [agency's] business and, if so, to produce the documents").

### B.    Exemption 6

Of the documents that the Department has produced, it has made thirteen total redactions, all under FOIA Exemption 6. *See* Def.'s Suppl. Vaughn Index, Dkt. 20-1. Exemption 6 allows agencies to withhold certain information when disclosing it would result in a "clearly unwarranted invasion of personal privacy" and involves balancing privacy and public interests. *Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 152–53 (D.C. Cir. 2006). It is the agency's burden to show that redactions fall under a FOIA exemptions, 5 U.S.C. 552(a)(4)(B), which the agency may meet with a sufficiently detailed *Vaughn* index describing each redaction and its basis. *Nat'l Treas. Emps. Union v. U.S. Customs Serv.*, 802 F.2d 525, 527 (D.C. Cir. 1986); *Vaughn v. Rosen*, 484 F.2d 820, 828 (D.C. Cir. 1973).

The Department's *Vaughn* index shows that it primarily redacted personal contact information: email addresses of various private individuals,[3] Dixon's cell phone number, and

---

[3] While the Foundation does not appear to challenge the appropriateness of redacting private parties' email addresses, it questions whether the redactions really are just that and asks the Court to conduct an *in camera* review. *See* Pl.'s Opp'n at 5–6, 25–27. The Court previously ordered the Department to file a *Vaughn* index to clear up an earlier "imprecision" related to the redactions, *see* Minute Order of April 14, 2021, and the Department did so, *see* Dkt. 20. That index "provide[s] specific information sufficient to place the [redactions] within the exemption

Goldberg's non-government email address.  *See* Vaughn Index, Dkt. 20-1; Minami Decl. ¶¶ 20, 22, 25.  The Foundation objects to the latter two, though it is unclear why given that it already knows both.  Regardless, the redactions of Dixon's cell phone number and Goldberg's non-government email address were appropriate.

As a starting point, private individuals "have a clear privacy interest in avoiding the disclosure of their personal email addresses."  *Gov't Accountability Project v. U.S. Dep't of State*, 699 F. Supp. 2d 97, 106 (D.D.C. 2010).  Department officials do not lose that privacy interest in their personal contact information just by virtue of being public employees.  *See Cause of Action Inst. v. Exp.-Imp. Bank of U.S.*, 521 F. Supp. 3d 64, 93 (D.D.C. 2021); *Wade v. IRS*, 771 F. Supp. 2d 20 (D.D.C. 2011).  Because the asserted privacy interest is more than *de minimis*, the Court must balance it against the public interest in disclosure.  *Judicial Watch*, 449 F.3d at 153.

The "only relevant public interest" is whether the information would "'she[d] light on an agency's performance of its statutory duties' or otherwise let citizens know 'what their government is up to.'"  *Lepelletier v. FDIC*, 164 F.3d 37, 46 (D.C. Cir. 1999) (quoting *DOD v. FLRA*, 510 U.S. 487, 497 (1994).  It does not include personal contact information that "reveals little or nothing about an agency's own conduct," *DOJ v. Reps. Comm. for Freedom of Press*, 489 U.S. 749, 773 (1989).  As a result, the balancing test allows the Department to redact employees' personal contact information.  *See Nova Oculus Partners, LLC v. SEC*, 486 F. Supp. 3d 280, 290 (D.D.C. 2020); *Davidson v. Dep't of State*, 206 F. Supp. 3d 178, 200 (D.D.C. 2016).

The same is true for Dixon's cell phone number.  Dixon did not forfeit her general privacy interest in her cell phone number by including it in her email signature line in select

---

category," is "not contradicted in the record," and lacks indications of "agency bad faith."  *Larson v. Dep't of State*, 565 F.3d 857, 870 (D.C. Cir. 2009).  Thus, the Court declines to conduct an *in camera* review of the documents.

communications.  *See* Agency Ex. E, Dkt. 16-2 (example of Dixon omitting her cell phone number from email signature).  Nor is Dixon's cell phone number comparable to an office landline number, which has been subject to FOIA disclosure in other cases.  *Cf.* Pl.'s Opp'n at 24 (citing cases).  As the Department explained, a cell phone "is carried on one's person whether he or she is physically in office, at home, or on personal time."  Minami Decl. ¶ 21.  "Many people simply do not want to be disturbed at home by work-related matters," and individuals have an interest "in preventing at least some unsolicited, unwanted [calls] from reaching them at their homes."  *FLRA*, 510 U.S. at 510; *see also Smith v. Dep't of Treas.*, No. 17-cv-1796, 2020 WL 376641, at *4 (D.D.C. Jan. 23, 2020).  The Foundation does not even attempt to articulate a public interest served by disclosing Dixon's phone number.  And "something, even a modest privacy interest, outweighs nothing every time."  *Nat'l Ass'n of Retired Fed. Emps. v. Horner*, 879 F.2d 873, 879 (D.C. Cir. 1989).

Though the balancing is slightly different as to Goldberg's personal email address, it too was appropriately redacted.  Goldberg still has a privacy interest in her contact information, but it is somewhat diminished because her school email address was posted publicly.  *See* Bader Decl. Ex. 4.  That posting "does not mean that [she] has no interest in limiting the disclosure or dissemination of that information."  *Reps. Comm.*, 489 U.S. at 770.  "[W]hile public access may reduce the privacy interest, it does not eliminate it."  *PETA v. Dep't of Health & Hum. Servs.*, 464 F. Supp. 3d 385, 394 (D.D.C. 2020).  The Foundation articulates at least a plausible, if slight, public interest in knowing the extent to which employees are using personal email addresses for official business.  But here, that interest appears to be one belonging primarily to the Foundation— who wants to know for the sake of this FOIA request, *see supra* Part III.A.2—rather than to the public.  Because the value to the general public is quite minimal, even a "very slight privacy interest" "suffice[s] to outweigh" it.  *See FLRA*, 510 U.S. at 500.

14

Finally, the privacy interests of the private individual who was invited, but declined, to participate in a Department panel outweighs the public interest in disclosure. That individual has at least a moderate privacy interest in disclosure of their name because he or she did not voluntarily engage with the government—and rather affirmatively chose not to do so. *Cf. Pinson v. DOJ*, 160 F. Supp. 3d 285, 300–01 (D.D.C. 2016) (emphasizing voluntariness when ordering disclosure of private party's name). "Whatever the reason" the individual "chose[] not to" participate, "it is clear that they have *some* nontrivial privacy interest in nondisclosure." *FLRA*, 510 U.S. at 500. On the other side of the scale, the public interest is also minor. Knowing the name of an individual who did not participate in a Department event has at most an attenuated link to the public's interest in "identifying the actors who are able to exert influence on" agency policies, *Lardner v. DOJ*, No. 03-0180, 2005 WL 758267, at *18–19 (D.D.C. Mar. 31, 2005). Balancing these two interests on the head of a pin, the privacy interest ekes out. The Foundation has not carried its "obligation to articulate a public interest sufficient to outweigh" the nontrivial privacy interest. *Salas v. Off. of Inspector Gen.*, 577 F. Supp. 2d 105, 112 (D.D.C. 2008). Accordingly, the Department's motion for summary judgment as to the redactions will be granted, and the Foundation's motion will be denied.

## CONCLUSION

For the foregoing reasons, the Foundation's motion for summary judgment is granted in part and denied in part, and the Department's motion for summary judgment is granted in part and denied in part.  A separate order consistent with this decision accompanies this memorandum opinion.


DABNEY L. FRIEDRICH
United States District Judge

September 20, 2022

16